The London and Lancashire Indemnity Company of America *v.* Rose Duryea et al.

Superior Court    Middlesex County    File No. 11697

Memorandum filed January 5, 1955.

*Warren Maxwell* and *Joseph V. Fay, Jr.,* both of Hartford, for the plaintiff.

*Benjamin A. Markman,* of Hartford, *Goldstein and Peck,* of Bridgeport, and *Walter D. Briggs,* of Middletown, for the defendants.

TROLAND, J. This is an action for a declaratory judgment. On April 18, 1952, the plaintiff issued to the defendant Rose Duryea its owners and tenants liability policy numbered HN 1058831, covering the premises located on Main Street in the town of Colchester, Connecticut, known as Old Well Restaurant. The entire premises were declared to be for use as a restaurant, which use included the sale of intoxicating liquors.

The insuring agreement of interest in this case reads as follows: "1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of such of the hazards hereinafter defined as are indicated by specific premium charge or charges in Item 4 of the Declarations." The hazards covered are stated in the policy as follows: "Definition of

Hazards. Division 1. Premises—Operations. The ownership, maintenance or use for the purposes stated in the Declarations, of the premises and all operations during the policy period which are necessary or incidental to such purposes." The purposes of use stated in the "Declarations" was "Restaurants—et al—Code 1318," which it is agreed covered the sale of intoxicating liquors, and the specific premium charge in said "Declarations" was for "Bodily Injury Liability."

The policy as issued was effective May 5, 1952. There was attached to it and forming part of it an indorsement entitled "Endorsement Excluding Malpractice and Beverages and Food Consumption Hazards."

In view of the claims of the parties, the material portion of the indorsement reads as follows: "[N]otwithstanding anything contained in the policy to the contrary, it is understood and agreed that in consideration of the mutual agreements of the parties hereto, this policy does not cover any injury or alleged injury arising or resulting from . . . (b) the compounding, dispensing, administering and/or applying of any preparation, medicine, drug, chemical or compound used or sold or distributed in or in connection with the Insured's business; . . . (d) the possession, consumption, handling or use of any merchandise or product sold, handled or distributed by the Insured."

Thereafter, on March 9, 1953, the defendants Margaret E. Young, individually and as administratrix of the estate of Clifford W. Young, late of Windsor, and Margaret S. Young, executrix of the estate of Clifford E. Young, late of Windsor, brought suits against the defendant Rose Duryea for the recovery of damages for bodily injuries allegedly incurred by the defendant Margaret E. Young and

for the deaths of the said Clifford E. and Clifford W. Young, said injuries and death allegedly having resulted from the collision on October 19, 1952, of automobiles operated by the decedent Clifford E. Young and by one Ralph Bennett, and having been caused by the acts of the defendant Rose Duryea or those of her agents, servants or employees, in serving intoxicating beverages to the said Bennett, on said date, when she or they knew, or should have known, that he was in an intoxicated condition.

On or about March 12, 1953, the defendant Rose Duryea forwarded to the plaintiff a copy of the writ and complaint in said action. On March 16, 1953, the plaintiff returned said suit papers to the said defendant with the notification to her that said policy did not provide protection for the allegations of liability specified therein.

The fundamental question propounded by the parties for decision is whether the policy of insurance in question, covered the particular activity which allegedly produced the injuries.

The defendants Margaret E. Young et al. base their causes of action against the defendant Rose Duryea on the provisions of § 4307, General Statutes, which reads as follows: "Sec. 4307. LIQUOR SELLER LIABLE FOR DAMAGE TO INTOXICATED PERSON. If any person, by himself or his agent, shall sell any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, shall thereafter injure the person or property of another, such seller shall pay just damages to the person injured, to be recovered in an action under this section." Similar statutes are referred to in much of the legal literature as "Dram Shop Acts."

The plaintiff claims that its policy of insurance does not cover any hazard of Rose Duryea under the statute quoted above, on the ground that the statute

imposes a liability essentially penal in nature, and that the insurance contract cannot and should not be construed to cover it as a matter of public policy.

In support of its position plaintiff notes that the quoted section appears in the General Statutes in a part of the chapter entitled "Penalties and Procedure" and that earlier similar provisions of our statutes have been similarly associated.

Plaintiff argues that the liquor traffic is a public wrong; that the Connecticut "Dram Shop Act" is a supplement to the state's penal laws in controlling the evils caused by intoxicating liquors, and that its evident purpose and object is to punish those who furnish the means of intoxication. Plaintiff cites a number of cases in other jurisdictions, but relies heavily on its interpretation of *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, as authority for the proposition that public policy will not allow an insurer to assume and thereby nullify the deterrent effect of damages imposed by law on its insured as a penalty for a public wrong.

A careful reading of *Tedesco* v. *Maryland Casualty Co.*, supra, indicates that our Supreme Court has recognized that a statute may partake of the nature of both a penal and remedial statute. The court there states (p. 537) that "a policy which permitted an insured to recover from the insurer fines imposed for a violation of a criminal law would certainly be against public policy. The same would be true of a policy which expressly covered an obligation of the insured to pay a sum of money *in no way representing injuries or losses suffered by the plaintiff* but imposed as a penalty because of a public wrong" (italics supplied).

Our (Dram Shop Act) statute provides "such seller shall pay just damages to the person injured, to be recovered in an action under this section."

A leading case in another jurisdiction, cited by the plaintiff, holds (referring to the Illinois Dram Shop Act): "[T]he legislation is at the same time remedial and should be so construed as to suppress the mischief and *advance the remedy.*"

On the authority of *Tedesco v. Maryland Casualty Co.,* 127 Conn. 533, 536, 537, the court holds and rules tha⁺ the civil liability stated in § 4307 is remedial and compensatory in nature and that there is no public policy of the state of Connecticut prohibiting insurance of the liability of a liquor seller thereunder.

In so holding, the court has also given due weight to the considered opinion of the Federal District Court for the district of Connecticut in the case of *American Surety Co. v. Rodek,* Civil No. 4576, D. Conn., 1954, where Judge Smith, deciding a similar point, states: "Since the Connecticut act is phrased, 'just damages to the person injured,' it would appear to be primarily compensatory in purpose rather than penal. It may be noted that there is a separate criminal penalty imposed by other sections of the Liquor Act of fine or imprisonment or both for sale to an intoxicated person. While the question is not entirely free from doubt, we conclude that the civil liability section of the act, Sec. 4307 G.S. 1949, is compensatory in nature and that there is no public policy of the State prohibiting insurance of the liability of a liquor seller thereunder."

The plaintiff has advanced a second claim, that because of the indorsement excluding malpractice and beverages and food consumption hazards, the policy contains an express exclusion of coverage or insurance against statutory dram shop liability, even if public policy does not so require.

In approaching the solution of this phase of the case, the court is assuming that the general liability

provisions of the policy in question are sufficient to cover the hazards and risks imposed on the defendant Duryea by virtue of § 4307, unless such hazards and risks are excluded by the provisions of the indorsement attached to the policy, entitled "Endorsement Excluding Malpractice and Beverages and Food Consumption Hazards."

Plaintiff claims that the caption indicates an intended exclusion from coverage of beverage consumption hazards and that the language used in the indorsement excludes any liability for the dispensing of any preparation used, sold or distributed in connection with the insured restaurant business, or for the consumption, handling or use of any merchandise or product sold, handled or distributed by the insured.

Many cases have been cited by the plaintiff to illustrate the effect of a products hazard exclusion, on a policy providing premises hazard coverage. None of the cases, however, involved the statutory liability under discussion here, except the case of *American Surety Co.* v. *Rodek,* Civil No. 4576, D. Conn., 1954, referred to in the first part of this opinion.

In the *Rodek* case, in which there are basic similarities between the exclusion there at issue and the one involved here, the court held that the products liability exclusion did not exclude from the policy coverage the liability imposed upon the insured by § 4307.

The treatment of the subject matter in 7 Appleman, Insurance Law & Practice, §§ 4507, 4508, discussion of dram shops and products liability, indicates that the conventional products liability exclusions are insufficient, and that additional affirmative dram shop liability exclusions will be necessary to relieve the insurer against the number of instances

in which tavern keepers or owners are rendered liable by such statutes. Ordinary principles of insurance construction should control.

The cause of action of the defendants Young against the defendant Duryea does not rest upon any claimed injuries caused by the "possession, consumption, handling or use of any merchandise or product sold, handled or distributed" by Duryea. The cause of action exists only by virtue of the statute, in the event Duryea or her agents have sold any alcoholic liquor to an intoxicated person, who thereafter, in consequence of such intoxication, injured said claimants.

To extend the provisions of the products consumption exclusion in the policy to cover the very act of the defendant Duryea or agent in making a sale to a man already intoxicated would require a strained, forced and unreasonable construction, contrary to the long-established rule that contracts of insurance should be liberally construed to accomplish the purpose for which they are made.

The parties are advised that the cause of action alleged in the complaint of Margaret E. Young et al. v. Rose Duryea, returnable to the Superior Court for Hartford County on the first Tuesday of April, 1953, more specifically referred to in paragraph 3 of the complaint in this action, is within the coverage provided by the policy of insurance issued by the plaintiff herein to Rose Duryea, on April 18, 1952, and judgment may enter accordingly. *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533; *American Surety Co.* v. *Rodek*, Civil No. 4576, D. Conn., 1954; 7 Appleman, Insurance Law & Practice, §§ 4507, 4508; *McGrahan* v. *Public Indemnity Co.*, 269 Ill. App. 361, 364; *Scranton* v. *Hartford Fire Ins. Co.*, 141 Conn. 313; *Bessette* v. *Fidelity & Casualty Co.*, 111 Conn. 549.