The **AMERICAN INSURANCE CO.**

v.

Bruce **SAULNIER**, David R. **Edwards**, **PPA, Juanita R. Edwards, Richard R. Edwards, Joseph E. Saulnier, and Barbara H. Saulnier.**

**Civ. No. 9046.**

United States District Court
D. Connecticut.

April 2, 1965.

---

William P. Aspell, Hartford, Conn., for plaintiff.

Herbert S. Wolfe, and Mark A. Rosenthal, of Rosenthal & Wolfe, Hartford, Conn., for defendants, Saulnier.

Joseph A. Lorenzo and F. Timothy McNamara, Hartford, Conn., for defendants, Edwards.

BLUMENFELD, District Judge.

This is a suit for a declaration of non-liability under a homeowner's policy brought by the insurer against Joseph E. Saulnier and Barbara H. Saulnier, its named insureds, and Bruce Saulnier, who, as their son under the age of 21 and a resident of their household, became an insured by virtue of a provision in the policy. Additionally, David Edwards, a minor, and his parents, Richard R. Edwards and Juanita R. Edwards, are also made parties defendant. They have brought an action against Bruce for damages in the state court on behalf of their son, David, alleging that he was injured as a result of the negligence of Bruce in that, inter alia, "He threw a glass bottle which struck the plaintiff David R. Edwards causing the injuries aforesaid."

The insurance company undertook the defense of the state court suit under a reservation of rights agreement and promptly thereafter brought this action for declaratory relief to determine—in advance of that trial if possible—the validity of a defense it asserts under the policy.

The plaintiff is a citizen of New Jersey, and all of the defendants are citizens of Connecticut.

The policy was issued in Connecticut to cover the Saulniers' home in East Hartford, Connecticut, and the personal liability of its residents. Since the place where the contract was made or the place

of performance are the usual choices of Connecticut courts in the field of conflict of laws dealing with contracts, the parties are in agreement that Connecticut's law governs the interpretation of the policy's provisions.

The sole issue is whether the company's agreement to pay on behalf of Bruce the sum which he may become legally obligated to pay as damages to David because of "bodily injury * * * sustained by any person" as set forth in the policy under "Section II * * * 1. Coverage E—Comprehensive Personal Liability" is applicable in view of Special Exclusion (c), the pertinent portion of which provides that "Section II of this Policy Does Not Apply: * * * to injury * * * caused intentionally by * * * the insured." The question of fact presented is whether the injury to David was caused intentionally by Bruce.

On June 23, 1960, the day David was injured, Bruce, who was about 13 years old, rode to East Hartford's Hockanum Park on his bicycle. Several small children were wading and playing in the wading pool. David, a 4 year old, was among them. When Bruce arrived at the park, he stood his bicycle under a shelter near some others. Shortly after he had begun to play a game of checkers, not far from the pool, a boy told him that a girl had spilled some water on his baseball glove which had been left on his bicycle. She was one of two or three 11 or 12 year old girls who had been running in and out of the pool throwing paper cupsful of water at some boys who were around the pool. When Bruce's attention was called to what she had done, he went over to examine his glove and found that water had been spilled over it. He picked up an empty "coke" bottle that was lying on the ground nearby and walked rapidly after the girl who ran back into the pool. Bruce followed her until he was a few feet from the edge of the pool. He then threw the bottle into the pool. It struck David on the head.

The parties are in dispute about whether Bruce intended to hit the girl.

The law judges intent objectively. It is not possible to peer into a boy's mind, particularly long after the event. Shortly after the incident, he told his father that he did not intend to hit the girl with the bottle but merely wanted to frighten her. A few days later, he signed an interview report written by an investigator for the Town's insurer which contained the statement: "I picked up a coke bottle, which was near my bike, and I threw it at the girl. I intended to hit this girl with the bottle." Before me, he testified that at the time of that interview he was scared and that he did not make that statement, but simply agreed with what the investigator said. He also testified that he did not intend to hit the girl. Apart from these two versions from him, the facts are that the girl was directly in front of him and only about ten feet away when he threw the bottle. It went at least six feet to the right and short of her. It struck David, who was just rising to his feet.

■ Where an insurer sets up a special exclusion for the purpose of withdrawing from the coverage a specific liability it was unwilling to provide indemnity for, the burden is on the insurer to prove that exception to the risk.[1] O'Brien v. John Hancock Mutual Life Ins. Co., 143 Conn. 25, 29, 119 A.2d 329 (1955). I find that he did not intend to hit the girl when he threw the bottle.

It was David who was struck. None of the parties contend that Bruce intended to hit David. This was not a case of mistaken identity, as where one shoots at one person believing him to be some one else. There was no intent here to hit David. Bruce did not even see David until his head seemed to rise above the water just as the bottle struck him.

■■ The insurer contends that intentionally throwing a bottle into a pool occupied by a number of playing chil-

1. The burden of proof is not affected by the fact that the insurer is in the position of a plaintiff. Preferred Accident

Ins. Co. of New York v. Grasso, 186 F.2d 987, 991, 23 A.L.R.2d 1234 (2d Cir. 1951).

dren was conduct so likely to result in serious injury to some one that a resulting injury must be regarded as having been intentionally inflicted. It suggests that Bruce's conduct falls within the definition of wanton misconduct found in Bordonaro v. Senk, 109 Conn. 428, 431, 147 A. 136, 137, (1929), to wit: "Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another." Building upon this definition of wanton misconduct, it next argues that wanton misconduct is the equivalent of intentional misconduct. Some support for this view is found in Bordonaro, supra, 109 Conn. at 431–432, 147 A. at 137:

> "We define these terms in Menzie v. Kalmonowitz, 107 Conn. 197, at page 199, 139 A. 698, 699: "Wanton misconduct is more than neglience, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct.' When we say that wanton misconduct is the equivalent of wilful misconduct, we do not intend to characterize these terms as equivalents of each other, but as equivalent in result. Wilful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct, as we have shown, but in their resultant they are alike in their seriousness and gravity, and the law subjects whoever is guilty of either form or misconduct to like rules, and visits upon each a like liability. Gonier v. Chase Companies, Inc., 97 Conn., 46, 115 A. 677 [19 A.L.R. 83]."

Thus, even if there is some substance theoretically in the difference between "wanton misconduct" and "wilful misconduct" which results in injury, the difference is of subordinate significance where the distinction to be made is from common law negligence. As pointed out in Bordonaro, supra, 109 Conn. at 432, 147 A. at 137: "All that is needful in the consideration of an action based upon wilful or wanton misconduct is a brief explanation of what an action for ordinary negligence consists of, so that it may be readily distinguishable from the action for wilful or wanton misconduct."

And from another side, the distinction between wanton misconduct and wilful misconduct is equally without significance. Although recognizing that a judgment imposed for a violation of its former so-called "guest statute" was based on acts which it characterized as "improper or wrongful conduct, and constitutes wanton misconduct," the Supreme Court of Errors in Rogers v. Doody, 119 Conn. 532, 535, 178 A. 51, 53 (1935), went on to explain: "Reckless misconduct differs on the one hand from negligence and on the other from *intentional* misconduct." (emphasis added) On the basis of that difference it upheld an injunction restraining the collection of a judgment under the "guest statute" holding that it was not excepted from discharge in Bankruptcy by Section 17, sub. (a) (2) of the act as a liability based upon " * * * wilful and malicious injuries to person or property of another."

After holding what is not a wilful injury to the person, Rogers v. Doody points out at 535, 178 A. at 53, that, "An intentional injury results from an act done for the purpose of causing the injury or with knowledge that the injury is substantially certain to follow. Amer. Law Institute Restatement, Torts (Negligence), § 13, Comment d." The emphasis is on the "purpose" to cause injury as distinguished from an intentional act which results in injury. These are not the same. Sharkey v. Skilton, 83 Conn. 503, 77 A. 950 (1910).

■ Turning from tort law to contract interpretation, anyone reading the precise language of the phrase "injury * * * caused intentionally by * * * the insured" which delineates the kind of injuries excluded would hardly define it to

include injuries caused by wilful or wanton misconduct. However, the intimation that the phrase might be sufficiently ambiguous to be open to that interpretation brings into play the rule that the construction most favorable to the insured must be used. Ross v. Protective Indemnity Co., 135 Conn. 150, 152, 62 A. 2d 340 (1948). "When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." Raffel v. Travelers Indemnity Co., 141 Conn. 389, 392, 106 A.2d 716, 718 (1954). The exclusion clause must be construed narrowly.

Finally, the plaintiff argues that even if Bruce's act in throwing the bottle was done only with the intention of putting the girl in apprehension of harmful bodily contact that should be deemed equivalent to an intention to inflict bodily injury upon David. After concisely enunciating the doctrine that, "If the defendant intends to commit an assault or a battery upon a third person, but succeeds instead in causing an unintended harmful or offensive contact with the person of the plaintiff, the latter may recover as though the act were intended to affect him," Dean Prosser goes on to point out in his Law Torts, 2d ed. (1955) p. 33: "The intent is said to be 'transferred' to the victim—which is obviously only a fiction, or a legal conclusion, to accomplish the desired result of liability."

While the needs of a safe society for a civil remedy to satisfy an otherwise frustrated victim may be taken into account by courts in laying down a rule of law, the range of reference for the interpretation of language in an insurance policy, is the contract itself read in the light of the purpose of the parties entering into it. To reach the result which the insurance company contends for would require two fictional steps. First, Bruce's intent to frighten the girl would have to be transformed to an intent to cause bodily injury to her. Then, the intent to injure her would have to be "transferred" to an intent to injure David. There is no justification either in contract law or in public policy for importing fictions into insurance policies.

The function of an insurance policy is not to keep the peace—it is to divide the economic duty to make reparation to the injured party. An insurance company's problem is an underwriting one, not a moral one. It assumes risks from motives of business gain. It carefully calculates the risks involved and makes this calculation the basis of the premium exacted.

Any further sum which a jury in assessing damages to fully compensate David for the injury might add as a deterence to punish Bruce would not be recoverable under the policy. A clear separation can be maintained between those damages which are compensatory and those which are punitive by the submission of interrogatories to the jury. An example of the separation of these two theories in order to preserve the principle that it is contrary to public policy to insure a person against financial penalty imposed as a restraint against a wilful wrongdoer can be found in Tedesco v. Maryland Cas. Co., 127 Conn. 533, 18 A. 2d 357, 132 A.L.R. 1259 (1941); American Surety Co. v. Rodek, 128 F.Supp. 250 (D.Conn.1954), rev'd on another ground 229 F.2d 175 (2d Cir. 1956). The possible overlapping of these two theories did not create so much of a snarl as to require holding an insurance policy indemnifying an owner of a tavern against liability under the Connecticut Dram Shop Act contrary to public policy. Judge Smith said in 128 F.Supp. at 251: "If the recovery is plainly that of a penalty Connecticut public policy would prohibit insurance against it, but if the principal purpose is compensation for injury suffered, no such prohibition would, it seems, be enforced." See also London & Lancashire Indemnity Co. of America v. Duryea, 19 Conn.Sup. 222, 111 A.2d 25, rev'd on other grounds 143 Conn. 53, 119 A.2d 325 (1955). The general purpose of this Homeowner's policy is to secure indemnity against liability for damages because of harm to persons—not because they are wrongs, but because they

are harms. The indemnity it affords in this case does not contravene public policy. The liability which may be imposed upon Bruce in the state court action is not excluded from the policy's coverage.

Judgment may be entered for the defendants dismissing the action.