## PROVIDENCE WASHINGTON INSURANCE GROUP

v.

## Valerio ALBARELLO, Anthony Cence, Lee J. Spencer, Wallace Spencer, Peter J. Preisner, Valerio Albarello, Inc., and The Preisner Co.

### Civ. No. H–88–509 (JAC).

United States District Court, D. Connecticut.

Feb. 24, 1992.

Philip J. O'Connor, Gordon, Muir & Foley, Hartford, Conn., for plaintiff.

Theodore J. Tucci, Glenn D. Woods, Robinson & Cole, Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION

JOSÉ A. CABRANES, District Judge:

Plaintiff Providence Washington Insurance Group ("Providence Washington") seeks a declaratory judgment that, under a contract of insurance with defendants Valerio Albarello, Inc., and The Preisner Co., Inc., it has no obligation to undertake the legal defense of those defendants in a pending state court case brought against them by defendant Peter J. Preisner ("Preisner"). The case presents a question of first impression under Connecticut law—namely, whether an "occurrence," defined as an "accident" resulting in bodily or property damage, comprehends alleged mental distress, nervousness, and anxiety resulting from the intentional discharge of an employee and the conversion of stock in a corporation.

Contending that the discharge of an employee and the conversion of stock are not "occurrences" as defined in the policy of insurance it issued, Providence Washington moved for summary judgment. Citing the strong majority of courts that have agreed with Providence Washington's position, the court granted the motion in a ruling filed September 4, 1991. Defendants have moved for reconsideration of the court's decision. Inasmuch as defendants have cited cases in their most recent brief not previously addressed, and given the precedential importance of the issue presented, the court takes this opportunity to discuss defendants' contentions at greater length. Defendants' Motion for Reconsideration (filed September 16, 1991) is therefore granted. Upon reconsideration and for the reasons stated below, the court expands upon its earlier ruling and adheres to its result granting summary judgment for plaintiff.

## BACKGROUND

Although defendants have submitted that there are several material facts as to which there exists a genuine issue to be tried, *see* Local Rule 9(c) Statement of Material Facts as to Which it is Contended There Exists a Genuine Issue to be Tried (filed May 29, 1991), plaintiff's motion for summary judgment may be disposed of by examination of the two documents that the parties agree lie at the center of this dispute. The dispositive documents are a policy of insurance issued by Providence Washington to Valerio Albarello, Inc., and The Preisner Company, Inc., ("Policy") and a Summons filed by Preisner in the Connecticut Superior Court against Valerio Albarello, Inc., and others ("State Complaint"). Memorandum in Support of Plaintiff's Mo-

tion for Summary Judgment (filed Apr. 3, 1991), Exs. A, B.

The Policy and State Complaint disclose the following. Providence Washington issued a policy of general liability coverage to defendants Valerio Albarello, Inc., and The Preisner Co., Inc. In pertinent part Providence Washington's policy provided that Providence Washington would

> pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence*, and [Providence Washington] shall have the right and the duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage ...

Policy at 13 (emphasis added). The Policy defined an "occurrence" as

> an accident, including continuous or repeated exposure to conditions, which results in bodily damage or property damage neither expected nor intended from the standpoint of the Insured.

Policy at 21.

On July 16, 1987, Preisner commenced a civil suit in the Connecticut Superior Court against Valerio Albarello, Anthony Cence, Lee J. Spencer, Wallace Spencer, Valerio Albarello, Inc., and The Preisner Company, Inc. In his complaint Preisner alleges that he conveyed his interest in a family partnership to Valerio Albarello, Inc., in consideration for an employment contract of five years with The Preisner Co., Inc., and shares in that corporation. State Complaint, Count One, ¶¶ 8–13. Preisner further alleges that shortly after he conveyed his interest in the family partnership, defendants Valerio Albarello ("Albarello") and Anthony Cence ("Cence"), acting as directors of The Preisner Co., Inc., discharged Preisner from his position without just or sufficient cause and in breach of his employment contract. *Id.*, ¶¶ 21–22. Furthermore, the defendants allegedly never issued Preisner the promised shares in The Preisner Co., Inc. *Id.*, ¶ 19. As a result of the foregoing, Preisner alleges, he has

suffered a loss of morale, confidence, and/or self-esteem, humiliation, nervousness, anxiety and mental distress, which has resulted in severe mental and physical injury....

*Id.*, ¶ 26. This allegation is repeated in Count Five of the State Complaint, ¶ 17.

Albarello and Cence have each sworn that it was neither their purpose nor expectation that Preisner would "suffer severe mental and physical injuries as a result of his discharge from employment" and the transaction in which Preisner sold his share in the partnership. *See* Affidavit of Valerio Albarello (filed May 28, 1991) ¶¶ 4–5, 7–8; Affidavit of Anthony Cence (filed May 28, 1991) ¶¶ 4–5, 7–8.

## DISCUSSION

The parties agree that the interpretation of the Policy is governed by the law of Connecticut. The parties further agree that the duty of the insurer to defend a lawsuit against the insured is measured by the allegations of the complaint. *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21, 24 (1967). If the complaint alleges a liability not covered by the insurance policy, the insurer is not required to defend. *Hogle v. Hogle*, 167 Conn. 572, 576, 356 A.2d 172, 174 (1975). The question is therefore whether the allegations of the State Complaint fall within the liability coverage of the Policy.

Providence Washington argues, first, that Preisner's alleged discharge and the alleged conversion of stock promised to Preisner are not "occurrences" as defined in the Policy, and, second, that Preisner's alleged injuries do not constitute bodily injury or property damage within the meaning of the Policy. Because I agree that the State Complaint does not allege an "occurrence" within the definitions of the Policy, it is not necessary to address Providence Washington's second argument.

Neither party has cited any Connecticut cases presenting closely similar facts and the court must therefore construe the Policy as it believes the Connecticut Supreme Court would were it to have

occasion to do so. The guiding principle is that "[i]f the terms of the policy are clear and unambiguous, then the language must be given its natural and ordinary meaning." *Cunninghame v. Equitable Life Assur. Soc.*, 652 F.2d 306, 308 (2d Cir.1981) (Connecticut law).

■ As noted, the Policy defines an "occurrence" as

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

Policy at 21. An "accident," in the words of one eminent authority, is a "sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." *Webster's Third New International Dictionary of the English Language* (Merriam, 1976) at 11. It is perhaps redundant to limit the definition of "occurrence" to an accident resulting in damage "neither expected nor intended from the standpoint of the Insured," since an event that *did* result in intended or expected damage would presumably not be an "accident." However, this arguable redundancy does not vitiate the limiting effect of the word "accident." Because the alleged discharge of Preisner and conversion of stock were concededly intended events, they would appear not to have been "accidents" and consequently not "occurrences" within the scope of the Policy.

Defendants have argued that although the alleged discharge and conversion of stock were intentional, the defendants in the state action, according to their sworn statements, did not intend any of the bodily harm Preisner has alleged. Defendants therefore argue that the bodily harm alleged was indeed an accident and consequently an occurrence. This theory of coverage is not obviously supported by the plain language of the Policy. The damage itself may be "accidental" in the sense of unintended, but the Policy insures against bodily injury or property damage "caused by" an accident. Put another way, the Policy's plain language indicates that bodily or property damage is not itself the "accident" insured against.

Defendants rely heavily on *American Ins. Co. v. Saulnier*, 242 F.Supp. 257 (D.Conn.1965) (Blumenfeld, J.). In that case, the court interpreted a clause excluding from coverage "injury ... caused intentionally by ... the insured." *Id.* at 258 (ellipses in original). The court noted the distinction between " 'purpose' to cause injury as distinguished from an intentional act which results injury," *id.* at 260, and held that the insurer must prove the insured's purpose to cause injury in order to successfully invoke the exclusion.

California precedent identical to *Saulnier* was cited to the California Court of Appeal in two cases similar to this one. *See St. Paul Fire and Marine Ins. Co. v. Superior Court*, 161 Cal.App.3d 1199, 208 Cal.Rptr. 5, 7 & n. 1 (1984); *Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 226 Cal.Rptr. 435, 436–37 & n. 3 (1986). The *Royal Globe* court reviewed a definition of "occurrence" identical to that here in connection with an asserted duty to defend a breach of contract action, and the *St. Paul Fire* court interpreted coverage for damage caused by an "accidental event" as applied to an alleged wrongful termination of employment. Both courts distinguished California law identical to *Saulnier* as relating to exclusions from coverage, rather than coverage in the first instance. The courts noted that while it is the insurer's burden to prove an exclusion, it is the insured's burden to show initial coverage. Accordingly, both courts did not require the insurer to defend. *See also St. Paul Mercury Ins. Co. v. Ralee Engineering Co.*, 804 F.2d 520 (9th Cir.1986) (following *Royal Globe*); *Hartford Fire Ins. Co. v. Karavan Enterprises, Inc.*, 659 F.Supp. 1075, 1077 (N.D.Cal.1986) ("Neither the intentional termination nor any unintended consequences of the termination constitute an 'occurrence' or harm caused by an 'occurrence.' "); *but see Mutual Service Casualty Ins. Co. v. Co-op Supply, Inc.*, 699 F.Supp. 1438 (D.Mont.1988) (extending Montana analog of *Saulnier* to primary coverage in context of wrongful discharge claim). A further point is that here the

distinction between "accident" and "damage" is clear in the language of the Policy, whereas in the *Saulnier* case the word "intentionally" was ambiguous on its face.

A slightly different but not incompatible response to the arguments and type of affidavits presented here was made by the New Hampshire Supreme Court in *Jespersen v. United States Fidelity & Guaranty Company*, 131 N.H. 257, 551 A.2d 530 (1988). There the insureds sought a declaratory judgment that they were entitled to coverage in a suit against them for wrongful discharge under an "occurrence" policy defining "occurrence" exactly as it is defined here. In support of their claim the insureds submitted an affidavit that the mental and physical distress the employee allegedly suffered as a result of the discharge was not intended by the insureds. *Id.* 551 A.2d at 532. The court held that the affidavit was "of no consequence" because some degree of mental and physical distress was the "natural consequence" of losing one's job. *Id.* at 533. The court concluded that a wrongful discharge is so "inherently injurious" that the party intentionally discharging the employee "must be charged with intending those consequences." *Id.* See also *Globe Indemnity Co. v. First American State Bank*, 720 F.Supp. 853, 857 (W.D.Wash.1989) ("A deliberate, intentional act with foreseeable results is not [an 'occurrence']") (no duty to defend allegations of insured's fraudulent scheme), *aff'd without opinion*, 904 F.2d 710 (9th Cir.1990).

In their memorandum in support of reconsideration, defendants cite a few recent pollution cases that they contend support coverage in this case. However, these cases will not do the service defendants seek. In *Johnstown v. Bankers Standard Ins.*, 877 F.2d 1146 (2d Cir.1989), the Court of Appeals had occasion to determine whether the seepage of hazardous wastes was an "occurrence" under New York law. In that case, the insured municipality had some knowledge of the risk that use of a dump for certain wastes might result in environmental damage, but continued to use the dump in a fashion that caused the pollution. This knowledge was not enough to preclude a finding that the pollution was an "accident." However, the court noted the distinction in New York law between

> damages which flow directly and immediately from an intended act, thereby precluding coverage, and damages which accidentally arise out of a chain of unintended though expected or foreseeable events that occurred after an intentional act. Ordinary negligence does not constitute an intention to cause damage; neither does calculated risk amount to an expectation of damage....

*Id.* at 1150, *quoting Brooklyn Law School v. Aetna Casualty and Sur. Co.*, 849 F.2d 788, 789 (2d Cir.1988). The court went on to observe that recovery under "occurrence" policies may be barred if the damage incurred was "constructively intentional." *Id.* at 1151. The New York view is thus consistent with that of New Hampshire in *Jespersen, supra*, which held that an employer discharging an employee must be charged with the intent of causing some mental distress since that is the natural consequence of a discharge. 131 N.H. 257, 551 A.2d 530, 533 (1988). The general statements quoted by defendants in two other pollution cases, *Gloucester v. Maryland Cas. Co.*, 668 F.Supp. 394 (D.N.J. 1987), and *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139, *vacated*, 1988 WL 35691 (W.D.Mich.1988), are not applicable here because those cases did not involve circumstances where the insured could be charged with constructive intent to cause the alleged injury. See *Gloucester*, 668 F.Supp. at 401 ("The 'occurrence' clause will act to prohibit coverage where it is shown the insured polluter knew or should have known of the ongoing pollution." (citation omitted)). Looking at "the quality and purpose of the transaction as a whole," *Messersmith v. American Fidelity Co.*, 232 N.Y. 161, 133 N.E. 432, 433 (1921) (Cardozo, J.), the court must conclude that any "loss of morale, confidence, and/or self-esteem, humiliation, nervousness, anxiety and mental distress" said in the State Complaint to have been suffered by Preisner was not accidental and accordingly not an "occurrence" as defined in the Policy.

The foregoing metaphysics of interpretation aside, perhaps the most important rea-

son that the insurer should not have a duty to defend here is that such a duty would be inconsistent with the underlying purposes and economics of the occurrence liability policy. Under the theory advocated by defendants, an insured could willfully breach a contract and then claim entitlement to insurance-funded defense on the theory that he did not desire or expect that the party bringing suit on the contract would suffer any damages. "Mental distress" of some sort is the common result of commercial relations gone awry. Even if the insurer would not be liable for significant damages once "mental distress" damages were proven to be small, a party bringing suit against the insured would often be able to extract from the insurer some sum smaller than the costs of defending the suit in order to settle the case. In such circumstances the possibility of collusion between the insured and the party ostensibly bringing suit against him cannot be discounted, *see Royal Globe*, 226 Cal.Rptr. at 436, especially in view of the fact that, in contrast to many tort suits, the parties to a contract dispute or a wrongful discharge claim are already acquainted and thus better situated to collude.

Indeed, were courts to hold that insurers must defend suits such as Preisner's, insurers would doubtless move to amend their occurrence liability policies to exclude such coverage. There seems little point to such an exercise when the plain terms of the policy do not support a theory of coverage.

Finally, it may be noted that defendants have adduced only one case with similar facts in which a court found a duty to defend. *See Mutual Service Casualty Ins. Co. v. Co-op Supply, Inc.*, 699 F.Supp. 1438 (D.Mont.1988). In addition to the several cases noted above for the majority view denying coverage, plaintiff has also properly cited *St. Paul Fire & Marine Ins. Co. v. County School District*, 612 F.Supp. 285 (D.Wyo.1985) (Wyoming law) (wrongful failure to rehire), and *E–Z Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 726 P.2d 439 (1986) (en banc) (employment discrimination). Inasmuch as language similar or identical to the Policy's appears to be widely used throughout the country, a uniform interpretation will ad-vance the contractual process. Parties seeking coverage of the sort advocated by defendants will be on notice that it must be bargained for, and insurers may set rates for standard occurrence policies confident that they will not be required to defend suits such as Preisner's.

Because the language of the policy is clear and unambiguous, and there are no material issues of fact, summary judgment is appropriate. Fed.Rule Civ.Pro. 56(c); *Jurrius v. Maccabees Mutual Life Ins. Co.*, 587 F.Supp. 1301, 1305 (D.Conn.1984) (Clarie, J.) (collecting authorities).

## CONCLUSION

For the reasons stated above, defendants' Motion for Reconsideration (filed Sept. 16, 1991) is GRANTED. Upon reconsideration, the court ADHERES to its decision granting summary judgment for plaintiff and reaffirms its declaration that plaintiff has no contractual obligation to undertake the legal defense of defendants in the case of *Peter J. Preisner v. Valerio Albarello, Inc., et al.*, now pending in the Connecticut Superior Court.

It is so ordered.