Rockingham
No. 88-008

MARSHALL JESPERSEN & a.

v.

UNITED STATES FIDELITY & GUARANTY COMPANY & a.

December 12, 1988

*Sheehan, Phinney, Bass & Green P.A.*, of Portsmouth (*Peter F. Kearns & a.* on the brief, and *Mr. Kearns* orally), for the plaintiffs.

*Devine & Nyquist*, of Manchester (*Corey Belobrow* on the brief and orally), for the defendant United States Fidelity & Guaranty Company.

*Devine, Millimet, Stahl and Branch P.A.*, of Manchester (*Joseph M. McDonough, III,* and *Mark D. Wiseman* on the brief, and *Mr. Wiseman* orally), for the defendant United Services Automobile Association.

*Wiggin & Nourie*, of Manchester (*Arnold Rosenblatt* on the brief and orally), for the defendant Jefferson Insurance Company.

JOHNSON, J. In this declaratory judgment action to determine whether they are entitled to coverage under three insurance policies, insureds Marsha and Marshall Jespersen and Dein Hosts, Inc. (Dein Hosts) appeal a decree of summary judgment in favor of insurers United States Fidelity & Guaranty Company (USF&G), United States Automobile Association (USAA), and Jefferson Insurance Company (Jefferson). The Superior Court (*Groff*, J.) approved a determination by the Master (*R. Peter Shapiro*, Esq.) that, as a matter of law, the insureds were not entitled to coverage in an underlying action against them for damages, because the injuries the insureds allegedly caused were anticipated results of their intentional acts. We affirm.

The relevant facts are not in dispute. The plaintiff in the underlying action is the Jespersens' former employee and business partner, Joseph Pignato. Mr. Pignato owned and operated a restaurant in Rye. Because he required financial assistance, he entered into an agreement with the Jespersens in June, 1984, in exchange for financing. This agreement made the Jespersens officers and shareholders of two corporations formed in accordance with its terms, one of which, Dein Hosts, was the operating entity for the restaurant. Under the agreement, Mr. Pignato owned 49% of the business and was employed, under contract, by Dein Hosts to manage the restaurant. As manager, Mr. Pignato was also entitled to live in an apartment on the restaurant premises, to take his meals at the restaurant, and to receive a salary and other benefits.

In January 1985, the Jespersens terminated Mr. Pignato's employment in accordance with a contract provision allowing his discharge for cause. Mr. Pignato then sued the Jespersens and Dein Hosts, alleging wrongful discharge, intentional breach of contract, intentional infliction of emotional distress, wrongful eviction, and wrongful conversion. In addition to economic damages, Mr. Pignato sought recovery for "humiliation, anxiety, loss of self-esteem and morale, nervousness, and loss of reputation."

The insureds provided the three insurance carriers timely notice of litigation, seeking representation in the suit and coverage for the mental and physical injuries alleged. Each of the policies in question provides coverage for "an occurrence." Both the USF&G and the Jefferson policies define "occurrence" as:

> "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*."

(Emphasis in original (USF&G).) The USAA policy provides that "occurrence":

> "means an accident, including exposure to conditions, which results, during the policy period, in:
> a. *bodily injury*; or
> b. *property damage*."

(Emphasis in original.)

There is no dispute that the Jespersens intended to discharge Mr. Pignato, to discontinue all benefits under the employment contract, and to prevent his further involvement in management of the business. On the basis of the above definitions, each of the carriers therefore denied coverage on grounds that the acts alleged were intentional and inherently injurious and thus outside the scope of an "occurrence." The master granted summary judgment for the carriers in the ensuing declaratory judgment action. This appeal followed.

■ Summary judgment affords savings in time, effort, and expense by allowing courts to grant final judgment without trial under appropriate circumstances. "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III.

The insureds do not dispute the appropriateness of summary judgment in this case, but rather, urge that the master improperly applied the law to the issues at hand. They first argue that the master was required to find that they did not intend to cause the injuries for which Mr. Pignato is suing because Marshall Jespersen submitted an affidavit to that effect in response to which the carriers submitted no counter-affidavit. According to the insureds, their insurance contracts provide coverage for unintended injuries resulting from an intentional act unless that act is so inherently injurious that the damage in question was certain to follow from it. Because they further contend that Mr. Pignato's injuries are not the inherent result of an intentional discharge, they urge us to reverse the master's decision. The carriers, of course, argue that the master properly determined that the acts in question were inherently injurious and correctly applied the law in rendering his decision.

We recently stated the relevant legal rules in *Vermont Mutual Insurance Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986). Like the insurance policies here, the policy we considered in *Vermont Mutual* defined, in terms of an "accident," an "occurrence" for which an insured was entitled to representation and coverage. As we stated in *Vermont Mutual*, this mode of definition requires, in the first instance, that the injury for which recovery is sought be the result of an accident. *Id.* at 523, 517 A.2d at 802. The term "accident," in turn, is reasonably understood to mean:

> "'an undesigned contingency, . . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'"

*Vermont Mutual supra* (citations omitted).

█ Because some intentional acts nevertheless involve accidents under this definition, we determine whether an injury was the result of an accident not by considering "the character of the act viewed in isolation, but . . . the character of the act viewed, with reference to the insured, as a cause of injury." *Vermont Mutual, supra* at 524, 517 A.2d at 803. From this perspective, an injury is not the result of an accident, and therefore not the result of an occurrence for which there is coverage, if the insured either intended that his act cause injury or intentionally engaged in an act so inherently injurious that it was certain to result in injury.

The parties do not dispute, and we see no reason to doubt, that the interpretation we employed in *Vermont Mutual* is equally applicable to the language in each of the three policies we now

consider. Although the insureds' statement of law is essentially correct, we note, in passing, that their reliance on *MacKinnon v. Hanover Insurance Co.*, 124 N.H. 456, 471 A.2d 1166 (1984) in interpreting that law for present purposes is misplaced. Unlike the policies here and in *Vermont Mutual*, the *MacKinnon* policy did not include a clause describing the scope of coverage in terms of accidental occurrence. It instead limited coverage by means of an exclusion clause denying payment for "'bodily injury . . . expected or intended by the insured.'" *Id.* at 459, 471 A.2d at 1167. Insofar as it was based on language peculiar to that policy, *MacKinnon* is here irrelevant.

In keeping with *Vermont Mutual*, the master held that the damages alleged flowed from the Jespersens' initial act of intentional discharge and that there was, as a consequence, no "occurrence" for which coverage could be had. Contrary to the insureds' argument, we do not understand this holding to shift the burden of proof concerning coverage from the insurer to the insured, RSA 491:22-a, by requiring that insureds prove the presence of some intervening cause of injury in order to be entitled to coverage for the consequences of an intentional act. Rather, we understand the master's holding to express his recognition that an act cannot be the accidental cause of an injury if injury was certain to follow from it.

We further agree that the Jespersens' intentional act was inherently injurious. The Jespersens discharged their business partner from his position as manager of the restaurant he founded, depriving him of his residence, benefits, and salary. Some degree of the mental and physical distress Mr. Pignato claims to have suffered is certainly the natural consequence of such a discharge, and the act was thus so inherently injurious that the Jespersens must be charged with intending those consequences.

Because their intentional act was inherently injurious, it is of no consequence that the Jespersens have sworn, without contradiction, that they did not intend to cause the alleged injuries. That a court may later determine that the Jespersens' actions were justified, and that they are not legally required to compensate Mr. Pignato, is likewise irrelevant to our decision.

Because the master, therefore, correctly determined that Mr. Pignato's injuries were not the result of an "occurrence," summary judgment in favor of the insurers was properly granted.

*Affirmed.*

All concurred.