Hillsborough
No. 88-428

DAVID A. FISHER AND JULIE A. FISHER

v.

FITCHBURG MUTUAL INSURANCE COMPANY

July 13, 1989

*Gray, Wendell & Clark,* of Manchester (*Grenville Clark, III,* and *Nathan T. Foose* on the brief, and *Mr. Foose* orally), for the plaintiffs.

*Wiggin & Nourie,* of Manchester (*Gordon A. Rehnborg, Jr.,* and *Doreen F. Connor* on the brief, and *Ms. Connor* orally), for the defendant.

BATCHELDER, J. The plaintiffs, David and Julie Fisher, filed a declaratory judgment action against their insurance carrier, Fitchburg Mutual Insurance Company (Fitchburg), asking the court to find that under the terms of the plaintiffs' homeowner's policy Fitchburg was obligated to provide a defense against and damage coverage for two suits filed against the plaintiffs by Martin and Barbara Arliss who alleged that the plaintiffs breached an agreement to sell them the plaintiffs' home. Both parties moved for summary judgment. The Court (*Dalianis,* J.) denied the plaintiffs' motion and granted summary judgment in favor of Fitchburg, and we affirm.

In August of 1987, the plaintiffs were the joint owners of a home located in Manchester for which they maintained a homeowner's insurance policy with Fitchburg. In August, 1987, the plaintiffs engaged in negotiations concerning the sale of their home. Although the parties dispute the exact sequence of events, they agree that at some point during the latter part of August, David Fisher signed two separate purchase and sale agreements for the same residential property, one with a Mr. and Mrs. Clayton and one with Martin and Barbara Arliss. Thereafter, the plaintiffs notified the Arlisses that they did not intend to convey the property to them and refused to perform under the Arlisses' contract.

In September 1987, the Arlisses brought a civil action against the plaintiffs claiming breach of contract and negligent and intentional misrepresentation. The Arlisses also filed a bill in equity against the plaintiffs in which they sought specific performance of the purchase and sale agreement and a temporary restraining order and permanent injunction to prevent the plaintiffs from conveying the property to any other party.

On September 22, 1987, the plaintiffs notified Fitchburg of the Arlisses' claims against them, and tendered the defense of the case. Fitchburg returned the pleadings and refused to assume the defense or pay any judgment which might result from the litigation, asserting by letter that "[t]he activities which led to this litigation would not be an 'occurrence' as defined in our policy."

On February 5, 1988, the plaintiffs filed a petition requesting a declaratory judgment that Fitchburg was obligated to provide a defense and afford coverage for the plaintiffs' expenses in the pending lawsuits filed by the Arlisses. The plaintiffs settled the suits on May 18, 1988, at their own expense. On July 7, 1988, the plaintiffs moved for summary judgment in the declaratory judgment action against Fitchburg, which objected and filed a cross-motion for summary judgment in its favor. After reviewing the claim against the Fishers, the court found that the Fishers' conduct was not accidental and that no coverable "property damage" resulted, denied the plaintiffs' motion and granted Fitchburg's motion for summary judgment. This appeal ensued.

The Fishers' homeowner's policy with Fitchburg states that:

> "This Company agrees to pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an *occurrence.* This Company shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient. This Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of this Company's liability has been exhausted by payment of judgments or settlement. (Emphasis added.)
>
> . . . .
>
> *'property damage':* means injury to or destruction of tangible property, including loss of use thereof
>
> . . . .
>
> *'occurrence':* means an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

On appeal the plaintiffs first argue that the court erred in finding that the Arlisses' suit, which contained a claim for unintentional negligent misrepresentation, did not allege an "occurrence" covered by the Fitchburg policy. Second, the plaintiffs argue that even if the actions alleged by the Arlisses in the underlying suits are deemed intentional, they are not inherently injurious or patently hazardous, and they should therefore still be viewed as an occurrence under the test set forth in *Vermont Mutual Insurance Co. v. Malcolm*, 128 N.H. 521, 524, 517 A.2d 800, 802 (1986). Third, the plaintiffs argue that as equitable owners of the Manchester property, the Arlisses suffered a loss of use which constituted "property damage" under the terms of the policy. Fourth, the plaintiffs contend that Fitchburg failed to meet its burden of proof regarding the non-existence of the Arlisses' property rights. Finally, the plaintiffs argue that the following reasons were not included in Fitchburg's initial letter denying coverage, and that Fitchburg should therefore be estopped from claiming: (1) that the Arlisses' lawsuits do not allege property damage; (2) that any damage alleged was expected or intended from the standpoint of the insured; or (3) that any damage alleged involved property owned by the insured.

■■ The terms of the Fitchburg policy require accidental bodily injury or property damage to constitute a covered "occurrence" under the policy. Because "[i]t is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy," *U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–52, 461 A.2d 85, 87 (1983), and because the parties agree that there was no bodily injury in this case, the relevant inquiry in this case is limited to whether the Arlisses' pleadings alleged "accidental" "property damage." The defendant argues that the events alleged by the Arlisses in the pleadings of the underlying case constitute neither an accident nor property damage, as those terms are defined in the policy or in common practice. We agree.

■■ This court has construed the term "accident," in the context of "occurrence" coverage under insurance policies with almost identical coverage language, to mean "an undesigned contingency, . . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Malcolm, supra* at 523, 517 A.2d at 802,

*quoted in Jespersen v. U.S. Fidelity & Guaranty Co.*, 131 N.H. 257, 260, 551 A.2d 530, 532 (1988). To determine whether an injury is fortuitous or not, we apply this definition with reference to the insured. *Malcolm, supra* at 523, 517 A.2d at 802. An insured's intentional act can never be considered accidental "unless some additional unexpected, independent and unforeseen [circumstances exist or] happening occurs which produces or brings about the result." *Id.* Furthermore, we assume that an insured's intentional act cannot be accidental when it is so inherently injurious that it cannot be performed without causing the resulting injury. *Malcolm, supra* at 524, 517 A.2d at 802. "From this perspective, an injury is not the result of an accident, and therefore not the result of an occurrence for which there is coverage, if the insured either intended that his act cause injury or intentionally engaged in an act so inherently injurious that it was certain to result in injury." *Jespersen, supra* at 260, 551 A.2d at 532.

The activity described in the pleadings of the underlying action cannot be described as "accidental." David Fisher admits that he signed two purchase and sale agreements for the same residential property and thereafter refused to perform one of the two agreements. A reasonable person would foresee that entering into two contracts to sell the same property would inevitably lead to the breach of at least one of the two contracts. Furthermore, the plaintiffs' breach resulting in the Arlisses' contract actions was just the sort of "inherently injurious" activity contemplated in *Malcolm. See Malcolm, supra* at 524, 517 A.2d at 802. The plaintiffs' argument that the *Malcolm* standard for determining whether there was an intentional, inherently injurious act which cannot be considered "accidental" required that the activity involved must be akin to that of discharging a gun out an open window confuses the determination of an "accidental occurrence" which could not be considered accidental with the tort standard of strict liability for ultrahazardous activity. *See Moulton v. Groveton Papers Co.*, 112 N.H. 50, 53–54, 289 A.2d 68, 71–72 (1972) (describing but rejecting tort standard of strict liability for ultrahazardous activity). In the context of these facts and pleadings, we are not persuaded by the plaintiffs' additional argument that the negligent misrepresentation claim somehow converts the plaintiffs' actions into an accidental occurrence. *See Malcolm, supra* at 524, 517 A.2d at 803 (we will not view an insured's act in isolation in determining whether it was accidental). *But see First Newton Nat. Bank v. Gen. Cas. Co.*, 426 N.W.2d 618, 624–26 (Iowa 1988) (finding duty to defend negligent misrepresentation claim under "occurrence" policy).

■ We also reject the plaintiffs' argument regarding property damage. The only property damage alleged by the plaintiffs was to the Arlisses' inchoate property interests. The policy language clearly defines covered "property damage" as "injury to or destruction of tangible property, including loss of use thereof." Inchoate equitable interests in property are not "tangible property," hence the court properly found that there has been no coverable "property damage" under the policy terms. *See In re Estate of Jesseman*, 121 N.H. 313, 315, 429 A.2d 1036, 1037 (1981); *Neuman v. Travelers Indemnity Co.*, 271 Md. 636, 653–54, 319 A.2d 522, 531 (1974).

■ Finally, we deny the plaintiffs' estoppel claim because we find that all three of the arguments challenged by the plaintiffs follow from the contract interpretation of the term "occurrence," which is what Fitchburg stated in its letter to the plaintiffs denying coverage.

*Affirmed.*

All concurred.