Lumber Insurance v. Allen          CV-91-715-B     05/05/93

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

Lumber Insurance Companies, Inc.

v.                                          Civil No. 91-715-B

Gerald Allen, Kathleen Allen,
Kenneth Moore, Jane Moore

**O R D E R**

Lumber Insurance Company ("Lumber") has filed a declaratory judgment action seeking a determination that it has no obligation to defend or indemnify its insureds, Gerald and Kathleen Allen ("Allens"), in an underlying tort action brought against them by Kenneth and Jane Moore ("Moores").  In this Order I rule on the parties' cross motions for summary judgment.[1]

## I.  FACTS

A.  The Underlying Complaint

The Allens and the Moores own abutting properties in Tuftenboro, New Hampshire.  The Complaint in the underlying action alleges that the Allens cut down trees and built a

---

[1]The Allens joined in a motion for summary judgment filed by the Moores, who were originally named as co-defendants.  Because the Moores are no longer parties in this action, see Order dated April 2, 1993, I treat the Allens as moving parties in place of the Moores.

driveway on the Moores' property without their permission. Although the Allens have an easement allowing them to build a driveway on the Moores' property, the driveway was allegedly constructed outside the easement area.

The underlying Complaint states two causes of action against the Allens. Count I alleges that the Allens are liable for negligent trespass and conversion. Count II alleges that the Allens violated Section 539:1 of the New Hampshire Revised Statutes Annotated by "willfully and unlawfully" cutting trees on the Moores' property.

B. The Insurance Policy

When the events alleged in the underlying Complaint transpired, the Allens were insured under a homeowners insurance policy they had purchased from Lumber. The policy provides liability coverage for suits "brought against an insured for damages because of bodily injury or property damage caused by an occurrence." "Occurrence" is defined in the policy as "an accident, including exposure to conditions, which result during the policy period in: (a) bodily injury; or (b) property damage." The policy does not define the term "accident."

## II. DISCUSSION

Lumber argues that it has no duty to defend or indemnify the Allens because the injuries for which the Moores are seeking compensation were not caused by an "accident." The Allens respond that Count I of the underlying Complaint plainly alleges accidental conduct because it claims that the Allens negligently caused the Moores' injuries. The Allens also argue that Count II alleges accidental conduct even though it seeks to hold them liable for "willful and unlawful" conduct, because the Allens are exposed to liability under Count II even if they cut the trees down on the Moores' property under a mistaken belief that they had the Moores' permission. In order to resolve this dispute, I must first determine the meaning of the term "accident" in the Allens' insurance policy and then apply the term to the causes of action alleged in the underlying Complaint.[2]

_____

[2]In ruling on these motions for summary judgment, I am guided by the following standard. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmoving party. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). However, once the moving party has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc.,

3

A. The Meaning of "Accident"

In Vermont Mut. Ins. Co. v. Malcolm, the New Hampshire Supreme Court defined the term accident as "an undesigned contingency, . . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated and not naturally to be expected." 128 N.H. 521, 523 (1986) (quoting Guardian Indus. Inc. v. Fidelity & Casualty Co., 271 Mich. 12, 18-19, 123 N.W.2d 143, 147 (1963)). The Court went on to hold that "an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results . . . or when it is so inherently injurious that it cannot be performed without causing the resulting injury." Id. at 523-24. Applying this test in Malcolm and subsequent cases, the Court rejected arguments that an insured's conduct was accidental where (i) the insured sexually assaulted a child, id. at 524; (ii) the insured wrongfully discharged an employee, Jespersen v. United States Fidelity & Guaranty Co., 131 N.H. 257, 261 (1988); and (iii) the insured intentionally signed conflicting purchase and sale agreements for the same property. Fisher v. Fitchburg Mut. Ins. Co., 131 N.H. 769, 733 (1989). See also King v. Prudential Prop. & Casualty Ins. Co., 684 F. Supp.

_____

477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

4

347, 349 (D.N.H. 1988) (intentional kidnapping not covered under a policy limiting coverage to unexpected and unintended damage). Implicit in the Court's rulings, however, is the recognition that an insured's intentional acts may be considered accidental if the insured did not intend to inflict injury and the insured's intentional acts were not inherently injurious. Malcolm, 128 N.H. at 524; Jespersen, 131 N.H. at 260.

The New Hampshire Supreme Court has not determined whether an insured's trespass or conversion will be considered accidental if the insured engages in these acts because of a mistaken belief that his conduct was authorized. However, applying the Malcolm two-part test, I conclude that the New Hampshire Supreme Court would determine that the insured's conduct was accidental in such cases if the insured's mistaken belief has a basis in fact. The first part of the Malcolm test focuses on the insured's subjective intentions and provides that the insured's conduct will not be considered accidental if he intends to injure another by his conduct. 128 N.H. at 523. A mistaken trespass or conversion easily survives this part of the test because an insured has no intention to injure a property owner if he believes that he has an owner's permission when he enters the property and removes what the owner later claims was wrongly

5

converted.

The second part of the _Malcolm_ test focuses on the insured's conduct rather than his subjective intentions. If injury will certainly follow from the insured's conduct, his conduct will not be considered accidental, even if he has no intention to injure. Applying this part of the test to intentional but mistaken conduct, the issue becomes whether the facts would support a belief that the conduct was authorized. If authorized conduct does not injure and the facts would support a belief that the conduct was authorized, injury is not certain to follow from the insured's acts. Thus, an insured's intentional but mistaken trespass or conversion also will survive this part of the test if the insured's mistaken belief has a basis in fact, because it cannot be said under such circumstances that the insured's conduct will necessarily result in injury.

Two contrasting examples will illustrate the application of the _Malcolm_ test to intentional but mistaken conduct. If an insured sets out to clear his property of trees and he inadvertently strays across the unmarked property line and cuts down a neighbor's tree, his conduct would be accidental under _Malcolm_, because he had no intention to injure and, when viewed from the insured's standpoint, his conduct is not certain to

6

injure his neighbor. However, if an insured decides to cut down a tree on property which is clearly marked with no trespassing signs, the insured could not claim that his conduct was accidental under Malcolm even if he lacked an intention to injure because injury will certainly follow from the insured's acts.[3]

In reaching this conclusion, I note that courts in other jurisdictions have held under various types of insurance policies that an insured's intentional acts will be covered if they are committed under a mistaken belief that the acts were authorized. See, e.g., Vermont v. Glens Falls Ins. Co., 137 Vt. 313, 315-16, 404 A.2d 101, 104 (1979) (construing a policy covering damages neither expected nor intended, the court held that an insured sheriff was entitled to coverage with respect to a wrongful levy claim where the sheriff had a mistaken belief that he was authorized to levy on the property he seized); Ferguson v. Birmingham Fire Ins. Co., 254 Or. 496, 500-03, 460 P.2d 342, 344-

---

[3]Lumber argues that cutting trees is inherently injurious regardless of the surrounding circumstances because injury necessarily will result from cutting trees on someone else's property. Lumber misunderstands the nature of the injury that will satisfy Malcolm. Such injury results from tree cutting only if the trees belong to someone else and permission to cut has not been obtained from the owner. Thus, tree cutting is not certain to result in injury unless the trees are cut under circumstances which would not support a belief that the tree cutting was authorized.

46 (1969) (construing a policy with an exclusion for intentionally caused property damage, the court held that insured was entitled to a defense for a damage claim caused by his contractor's trespass where the trespass was caused by a mistake concerning the location of a property line); York Indus. Center, Inc. v. Michigan Mut. Liab. Co., 271 N.C. 158, 161-64, 155 S.E.2d 501, 504-06 (1967) (construing a policy covering damages neither expected nor intended, the court held that an insured property owner was entitled to coverage for trespass damages resulting from a mistake concerning the location of the property line); J. D'Amico, Inc. v. Boston, 345 Mass. 218, 221-26, 186 N.E.2d 716, 719-21 (1962) (construing an accident policy, the court held that insured was entitled to a defense on a trespass claim where trespass was result of mistake); Patrick v. Head of Lakes Coop. Elec. Ass'n, 295 N.W.2d 205, 207-08 (Wis. App. 1980) (construing a policy covering damages neither expected nor intended, the court held that the insured was entitled to coverage on trespass claim where the insured had a mistaken belief that it had authority to cut trees); Continental Casualty Co. v. Platsburg Beauty & Barber Supply, Inc., 48 A.D.2d 385, 386-87, 370 N.Y.S.2d 225, 226-27 (1975) (construing an occurrence policy, the court held that insured was entitled to a defense against a wrongful

8

levy claim where the insured claimed the levy was the result of a mistake); Firco, Inc. v. Fireman's Fund Ins. Co., 173 Cal. App. 2d 524, 525-29, 343 P.2d 311, 312-14 (1959) (construing an occurrence policy, court held that insured was entitled to a defense for a trespass claim resulting from unauthorized cutting of trees because liability might be found even though the insured operated under a mistaken belief that he had authority to cut the trees). Although other courts have reached a contrary conclusion, see, e.g., Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co., 915 F.2d 306, 308-11 (7th Cir. 1990) (and cases cited therein), I do not find these decisions persuasive because they fail to acknowledge the premise recognized by the New Hampshire Supreme Court that intentional acts will be considered accidental if they are not intended to cause injury and are not inherently injurious.

Finally, I find support for my decision in the accepted New Hampshire rule that where language in an insurance policy is ambiguous and one reasonable interpretation favors coverage, the New Hampshire Supreme Court will adopt the interpretation favoring coverage. Coakley v. Maine Bonding & Casualty Co., No. 90-401, 1992 N.H. LEXIS 184, at *12-13 (Nov. 25, 1992); Trombly v. Blue Cross/Blue Shield of N.H.-V.T., 120 N.H. 764, 771-72

9

(1980).  Lumber chose in the present case to leave the term "accident" undefined in its policy.  Standing undefined, the term has many possible meanings, some of which would allow coverage for intentional acts committed under a mistaken belief of authorization and some of which would not.  Had Lumber wished to limit coverage for intentional acts, it could easily have done so either by providing an appropriate definition of "accident" or by adding an express exclusion for intentional conduct.  Since the New Hampshire Supreme Court has not issued a decision defining the term "accident" in this context, and since the term is ambiguous, it is appropriate under New Hampshire law to adopt an interpretation that favors coverage.

B.  Analysis of the Complaint

In New Hampshire, an insurer's duty to defend will be "determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the terms of the policy, even though the suit may eventually be found to be without merit."[4] United States Fidelity & Guaranty Co. v.

---

[4]The only exception to this rule is inapplicable here because Lumber's duty to defend can be determined solely from the underlying Complaint.  See M. Mooney Corp. v. United States Fidelity & Guaranty Co., No. 91-45, 1992 N.H. LEXIS 191, at *8 (Dec. 3, 1992).  I also note that Lumber has repeatedly urged me to confine my review to the facts alleged in the Complaint.

Johnson Shoes, Inc., 123 N.H. 148, 151-52 (1983). Accordingly, I confine my analysis to the facts alleged in the underlying Complaint. If I determine from the Complaint that the Allens are exposed to potential liability under any theory for which Lumber's policy provides coverage, Lumber will have an obligation to defend the entire action as long as the covered cause of action remains a viable theory in the case. Titan Holdings Syndicate, Inc. v. Keene, 898 F.2d 265, 269 (1st Cir. 1990).

Count II of the underlying Complaint pleads a violation of Section 539:1 of the New Hampshire Revised Statutes Annotated. In order to be liable under Section 539:1, a person must act "willfully and unlawfully." A person cannot act willfully and unlawfully under Section 539:1 unless he acts knowingly and not through accident or mistake. See Hynes v. Whitehouse, 120 N.H. 417, 420 (1980). Thus, the Allens cannot be found liable under Count II unless the Moores prove that the Allens knew that they had no right to cut down the Moores' trees. Such conduct necessarily involves an intention to injure. Therefore, it is not accidental under Malcolm and the Allens have no right to a defense or indemnification with respect to Count II of the underlying Complaint.

Count I presents a more difficult issue. This count alleges

11

that the Allens are liable for negligent trespass and conversion. Lumber argues that New Hampshire law does not recognize such claims. See, e.g., Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972); Titan Holdings Syndicate, Inc., 898 F.2d at 272; Muzzy v. Rockingham County Trust Co., 113 N.H. 520, 523 (1973). Accordingly, Lumber contends that I should disregard the Moores' attempt to characterize Count I as a negligence claim and treat it as a claim for intentional trespass and conversion, which Lumber argues cannot be considered accidental within the meaning of its policy. See, e.g., Fisher, 131 N.H. at 772-74; Allstate Ins. Co. v. Stamp, 134 N.H. 59, 63 (1991).

Even if I accepted Lumber's argument that Count I must be construed as pleading an intentional tort, I cannot accept its contention that it has no duty to defend. Unlike Count II, which could only be proved if the evidence demonstrates that the Allens knew that they had no right to cut down the Moores' trees, the Allens could be held liable for intentional trespass or conversion even if the evidence proves that they cut down the Moores' trees under a reasonable but mistaken belief that their actions were authorized. See, e.g., Restatement (Second) of Torts, § 164 cmt. a (1965) ("[i]f the actor is and intends to be upon the particular piece of land in question, it is immaterial

12

that he honestly and reasonably believes that he has the consent of the lawful possessor to enter, or, indeed, that he himself is its possessor"); see also id. § 222 A. Accordingly, because I have determined that the term "accident" in Lumber's policy includes intentional conduct, such as trespass and conversion, which is undertaken because of a mistaken belief grounded in fact that the conduct was authorized, I conclude that Lumber has an obligation to defend the Allens in the present action.

### III.  CONCLUSION

The Motion for Summary Judgment filed originally by the Moores and joined in by the Allens (document no. 8) is granted to the extent that it seeks a ruling that Lumber is obligated to provide a defense in the underlying action.[5]  Lumber's Motion for Summary Judgment (document no. 11) is granted to the extent that it seeks a judgment that it has no obligation to defend or indemnify the Allens with respect to Count II of the underlying Complaint.  Neither party has provided a sufficient record for me

---

[5]In a footnote to a supplemental memorandum of law filed after oral argument, Lumber suggests for the first time that the motion for summary judgment originally filed by the Moores and joined in by the Allens seeks summary judgment only with respect to Lumber's claim that the Allens' conduct was not accidental. Lumber's argument on this point is contradicted by the plain language of the motion which seeks judgment as a matter of law on all issues.

13

to determine whether or not the undisputed material facts establish that Lumber has a duty to indemnify the Allens as to Count I of the Complaint as a matter of law.  Accordingly, I deny both parties' Motions for Summary Judgment to the extent that they seek judgment with respect to Lumber's duty to indemnify the Allens on Count I of the underlying Complaint.

    SO ORDERED.


                                   _____
                                   Paul Barbadoro
                                   United States District Judge

May 5, 1993

cc:  Stephen Borofsky, Esq.
     Pamela Albee, Esq.
     Doreen Connor, Esq.