**PENNSYLVANIA MILLERS MUTUAL INSURANCE COMPANY**

v.

**John DOE.**

**Civ. No. 93–317–JD.**

United States District Court, D. New Hampshire.

May 12, 1994.

Kevin C. Devine, Devine & Nyquist, Manchester, NH, for Pennsylvania Miller Mutual Insurance Company.

Geoffrey P. Lynch, Lynch Law Office, Milford, NH, for John Doe.

## ORDER

DiCLERICO, Chief Judge.

Plaintiff Pennsylvania Millers Mutual Insurance Company ("PMMIC") has filed a declaratory judgment action seeking a determination that it has no obligation to defend or indemnify its insured, Leo H. Cheever, in an underlying tort action brought against him by John Doe ("Doe") through his mother and next friend Jane Doe. Doe has intervened as a defendant.[1] Jurisdiction is grounded on 28 U.S.C.A. § 1332 (1994). Currently before the court are PMMIC's motion for summary judgment (document no. 10) and Doe's motion for transfer without ruling to the New Hampshire Supreme Court (document no. 13).

### Background

The relevant facts are not in dispute. Between September 1991 and September 1992, Cheever befriended Doe, then fourteen, often inviting him and other minors to his home. On or about September 6, 1992, Cheever asked Doe to spend the day together and after the two rented a movie they returned to Cheever's home where Cheever performed fellatio upon Doe.[2]

On May 10, 1993, Doe filed a writ of summons in Hillsborough County Superior Court seeking compensation for bodily harm, pain and suffering, mental and emotional distress, risk of future disease and injury and other damages suffered. Exhibit A. The writ states five causes of action against Cheever. Count I, filed in a plea of trespass on the case, alleges Cheever is liable for the negli-

---

**1.** Cheever was subsequently dismissed as a defendant for lack of prosecution (document no. 9).

**2.** The underlying writ states the sexual assault occurred on September 6, 1992, while the grand jury indictment states the sexual assault occurred on September 9, 1992.

gent infliction of emotion distress because he "befriended [Doe] and often invited. him ..: to his home in situations where [Cheever] was the only adult and authority figure present" while "failing to recognize, and disclose, and seek professional treatment and assistance for his uncontrollable feelings of sexual attraction to [Doe]." Count II, filed in a plea of trespass, alleges Cheever was negligent when he failed "to seek professional assistance," failed "to refrain from inviting [Doe] to his home in a situation which no other responsible individuals would be present," failed "to warn [Doe] and/or his parents of his inappropriate sexual attraction" and was negligent when he "consumed alcoholic beverages in the company of [Doe] and offer[ed] alcoholic beverages to [Doe]...." Count III alleges that Cheever breached a statutory duty of care and is negligent *per se* for sexually assaulting Doe. Count IV alleges liability for an intentional tort and Count V alleges strict liability based on the sexual assault.

At the time the events described occurred, Cheever was insured under a standard homeowners insurance policy purchased from PMMIC. Section II of the policy states that coverage will be provided for suits "brought against an insured for damage because of bodily injury or property damage caused by an occurrence...." Exhibit C.

### Discussion

PMMIC contends it is entitled to summary judgment because "it is Black Letter Law in New Hampshire that occurrence-based Home Owners Policies ... do not afford coverage for liabilities stemming from sexual assaults upon minors." Motion for Summary Judgment, ¶ 17. Doe responds that Counts I and II allege causes of action independent of the sexual assault. Doe also argues that it is not firmly established that every sexual assault is excluded from occurrence-based coverage and therefore the remaining counts should be "transferred" to New Hampshire Supreme Court to determine the scope of the exclusion. *Id.* at ¶ 28.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually. required." *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992); *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). It is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to establish the lack of a genuine, material factual issue, *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Caputo v. Boston Edison Co.*, 924 F.2d 11, 13 (1st Cir.1991). However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed. R.Civ.P. 56(e)).

A federal court sitting in diversity applies the substantive law of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *American Title Ins. Co. v. East West Fin. Corp.*, 959 F.2d 345, 348 (1st Cir.1992). Under New Hampshire law, the court determines an insurer's duty to indemnify the insured by considering whether the allegations against the insured fall within the express terms of the policy. *United States Fidelity & Guar. Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–52, 461 A.2d 85, 87 (1983). The court therefore begins by examining the allegations set forth in the writ and the language of the insurance policy to determine whether Doe's damages arose from an "occurrence" for which PMMIC has a duty to indemnify Cheever.

As stated on the policy's definitions page, " 'occurrence' means an accident, including exposure to conditions, which result, during the policy period, in: a. **bodily injury;** or b. **property damage.** " *Id.* " 'Occurrence' thus

sweeps wider than 'accident,' because 'occurrence' is defined to include an injurious exposure to continuing conditions as well as a discrete event." *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 523, 517 A.2d 800, 802 (1986). "The injurious exposure must, however, itself be accidental in nature." *Id.* When interpreting "occurrence" in an insurance policy, the court focuses on "the definition of 'accident' as a *cause* of injury, as distinct from the injury itself." *Id.*

■ The New Hampshire Supreme Court has construed the term accident in identical insurance provisions. *See id.; see also Jespersen v. United States Fidelity and Guar. Co.*, 131 N.H. 257, 259, 551 A.2d 530, 531 (1988). An accident is "an undesigned contingency, ... a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Vermont Mut.*, 128 N.H. at 523, 517 A.2d at 802. There is a two-prong test for determining whether an act is an accident. *Id.* First, the court considers whether the insured intended to cause the injury. *See id.*

> [A]n insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results. "[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen [circumstance exists or] happening occurs which produces or brings about the result of injury or death."

*Id.* If the insured did not intend to cause the resulting injury, then the court considers next whether the act was inherently injurious. *See id.* "[A]n insured's intentional act [cannot] be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury." *Id.* at 524, 517 A.2d at 802.

■ Doe does not dispute that should the court find the sexual assault to be inherently injurious, then the assault would not be considered an occurrence and those counts "based solely and explicitly upon the sexual assault" would not be indemnified under the terms of the policy. Intervenor's Objection to Motion for Summary Judgment, ¶ 16. Rather, Doe contends that Counts I and II are "based wholly or substantially upon tortious occurrences *other than the sexual assault.*" *Id.* at ¶ 6. Doe argues that for purposes of these counts, the sexual assault is not the occurrence giving rise to the harm but the harmful consequence of Cheever's failure to seek counseling, to forbear inviting Doe into his home without other adults present, to warn Doe or Doe's parents of his attraction and to refrain from consuming alcoholic beverages in Doe's presence. *Id.*, ¶ 12–16. Doe asserts the various acts of negligence alleged are the "occurrence," claiming that "[h]ad the sexual assault on [Doe] never occurred, there could still be significant damages in the remaining conduct alleged in the writ." *Id.* at ¶ 20. He does not, however, specify what damage other than the assault itself was or could have been suffered as a result of Cheever befriending him and inviting him into his home.

The mere fact a person does not seek counseling or fails to recognize his or her sexual proclivities, does not, without more, cause harm to others. Doe implicitly recognizes this is the case when he argues that the sexual assault is the harm resulting from Cheever's "negligence." *Id.* at ¶¶ 18–20. However, a sexual assault is not an injury, it is an act that causes an injury.[3]

■ Cheever's acts cannot be converted into accidental occurrences by including two negligence-based counts in the underlying action. *See Fisher v. Fitchburg Mut. Ins.*

---

3. Doe, quoting 8 Richard B. McNamara, New Hampshire Practice: Personal Injury § 129 (1988), argues "the sexual assault is covered as an injury 'caused' by Mr. Cheever's negligence if it is found to have been a 'substantial factor in bringing about the harm.'" Doe misapplies the quoted section, which states "[n]egligent conduct is considered the proximate *cause* of harm if it a substantial factor in bringing about the harm." (Emphasis added). Even if Cheever's negligence could be construed as a substantial factor, the sexual assault would be a concurrent cause, not the injury itself. Furthermore, Doe's reliance on this section is misplaced. The doctrine of concurrent causes ensures a defendant is not relieved from liability where there are other contributing causes of the harm. It is not a method for determining what is a cause and what is an injury.

*Co.,* 131 N.H. 769, 773, 560 A.2d 630, 632 (1989). "In deciding the scope of a liability policy's coverage, a court must compare the policy language with the *facts* pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant." *Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265, 271 (1st Cir.1990) (citing *Johnson Shoes,* 123 N.H. at 151–52, 461 A.2d at 87). The assault is the only act alleged in the writ that is a cause of bodily injury, therefore the injuries alleged by Doe must be viewed as repercussions of the assault.

 The court next considers Doe's contention that the sexual assault against Doe is not necessarily inherently injurious under the *Vermont Mutual* standard. Doe contends *Vermont Mutual* does not resolve whether a single act of fellatio necessarily results in the type of injuries he sustained. He argues New Hampshire decisional law does not establish that all sexual assaults are inherently injurious and therefore the counts based on the assault should be "transferred" to the New Hampshire Supreme Court for consideration. Certification of this issue is neither necessary nor appropriate under the facts of this case.

*Vermont Mutual* involved an eleven year old boy who was sodomized and otherwise sexually assaulted, including fellatio, five times over the course of a weekend. Applying the two-part test, the court rejected arguments that an insured's conduct was accidental where the insured sexually assaulted a child, noting that while the defendant claimed he did not actually intend to inflict psychological injury, "[t]he assaults were inherently injurious in the most obvious sense that they could not be performed upon a boy without appalling effects on his mind as well as forbidden contacts with his body." 128 N.H. at 524, 517 A.2d at 802. Doe attempts to distinguish *Vermont Mutual* by arguing there is "a significant difference in both the frequency and the severity of the assault...." Intervenor's Objection to Motion for Summary Judgment, ¶ 28.

Unquestionably, under New Hampshire law Cheever's actions are inherently injuri-

ous. The New Hampshire Supreme Court has taken a broad view of the *Vermont Mutual* standard, describing both a breach of a purchase and sale agreement and a wrongful discharge as inherently injurious acts. *Fisher,* 131 N.H. at 773, 560 A.2d at 631; *Jespersen,* 131 N.H. at 260, 551 A.2d at 532. In the instant case, the act complained of is precisely the type of act contemplated by the *Vermont Mutual* court. Cheever abused a position of trust and his friendship with a young boy to commit a grievous sexual assault for his personal gratification. The intentional act of Cheever is not an occurrence and PMMIC is not obligated under the policy to defend or indemnify Cheever. The motion for summary judgment is granted.

### Conclusion

Plaintiff's motion for summary judgment (document no. 10) is granted. Defendant's motion to transfer without ruling (document no. 13) is denied.

SO ORDERED.