United Natl Ins. v. Penuches Inc.    CV-96-230-JD  03/14/97
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

United National Insurance Co.

    v.                              Civil No. 96-230-JD

Penuche's, Inc., et al.


O R D E R


United National Insurance Company ("United National") brought this now-consolidated action under N.H. Rev. Stat. Ann. ("RSA") § 491:22, seeking a declaration that it has no duty to defend or indemnify Penuche's, Inc. and Todd Tousley in a state court action brought against Penuche's and Tousley by Thomas Burke.[1]  Before the court are the motions for summary judgment of plaintiff United National (document no. 13), and of defendants Penuche's and Tousley (document no. 12) and defendant Burke (document no. 14).


Background

This insurance dispute arises out of a lawsuit filed in state court by Thomas Burke against Penuche's, Inc., a Keene, New

---

[1]On April 19, 1996, Todd Tousley and Penuche's filed a petition for declaratory judgment in New Hampshire Superior Court, seeking a declaration that United National had a duty to defend and indemnify Tousley and Penuche's in the underlying action.  The action was removed to federal court and, by order dated June 20, 1996, consolidated with the instant action.

Hampshire corporation doing business as Penuche's Ale House, and its president, Todd Tousley. Burke alleges that on October 4, 1995, he was assaulted from behind by a Penuche's patron after Burke attempted to break up a barroom altercation in which the patron had been involved. Burke further alleges that when he turned around, Tousley "approached [him] head-on and face to face, grabbing [him] in a bear hug in an apparent effort to immobilize him." Burke avers that "the force of Tousley's contact caused [him] to fall backwards, his body striking various obstructions as he fell," and contends that, as a result of the fall, he suffered a severe spinal cord injury. In count I of his complaint, Burke seeks relief against Tousley based on Tousley's negligence in (a) "carelessly and unreasonably intercept[ing Burke] for the purpose of moving him"; (b) "carelessly intercept[ing Burke] so that [he] was thrown backward, thereby unreasonably compromising [Burke's] ability to maintain his footing"; "carelessly forcibly mov[ing Burke] with [his] arms pinned to his sides, thereby unreasonably compromising [his] ability to protect himself in the event of a fall"; (d) "carelessly forcibly mov[ing Burke] backwards even though the floor surface was slippery and there were numerous obstructions preventing easy movement"; (e) "carelessly us[ing] a level of force that was wholly unnecessary to accomplish any proper

2

purpose"; and (f) "otherwise . . . failing to use reasonably safe means in his intervention with . . . Burke."  In count II, Burke alleges that Penuche's "is liable in respondeat superior for" Tousley's negligence, and further avers that Penuche's was "actively negligent insofar as the premises, being slippery and/or cluttered, were a proximate cause of Thomas Burke's fall" and the damages he has incurred.

After the commencement of the state court action, Tousley and Penuche's demanded that United National provide coverage for and a defense of Burke's claims under a multi-peril insurance policy issued by United National to "Todd Tousley DBA Penuche's Ale House."  The policy obligates United National to defend the insured against and indemnify the insured for claims asserting bodily injury caused by "occurrence[s] . . . arising out of the ownership, maintenance or use of the insured premises."  After originally refusing to provide a defense and denying any right to coverage, United National subsequently agreed to provide a defense subject to a reservation of rights, claiming that two exclusions in the policy relieve it of any obligation to provide coverage for Burke's loss.  The first exclusion, hereinafter the "liquor liability exclusion," provides that coverage does not extend to claims for

3

bodily injury or property damages for which the insured or his indemnitee may be held liable

    (I) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages.

The second exclusion, styled an "assault and battery exclusion," appears in a "multipurpose exclusion endorsement" and excludes coverage for

claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the Insured, and/or his employees.

## Discussion

United National contends that the liquor liability and assault and battery exclusions of the policy negate its duties to provide coverage for Tousley and Penuche's in the state court action brought by Burke. Specifically, it claims that the liquor liability exclusion is applicable because Burke's claims arise out of the service and sale of alcohol. United National further claims that, regardless of the fact that the state court action sounds in negligence, it "arises out of" two batteries -- the original altercation that Burke attempted to break up and of which he ultimately became a victim, and the bearhug in which Tousley placed Burke. The defendants dispute these assertions.

4

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56 (c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)).

Under New Hampshire law, "an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." Happy House Amusement, Inc. v. New Hampshire Ins. Co., 135 N.H. 719, 722, 609 A.2d 1231, 1232 (1992) (quoting United States Fidelity & Guar. Co. v. Johnson Shoes, 123 N.H. 148, 151-52, 461 A.2d 85, 87 (1983)); see also Fisher v. Fitchburg Mut. Ins. Co., 131 N.H. 769, 772, 560

5

A.2d 630, 631-32 (1989). A duty to defend will be found if, resolving any doubts in favor of the insured, coverage is inferable from the "reasonable intendment" of the pleadings. Green Mountain Ins. Co. v. Foreman, 138 N.H. 440, 443, 641 A.2d 230, 232-33 (1994) (citing Happy House, 135 N.H. at 722, 609 A.2d at 1232-33 (citation omitted)). When construing the scope of a liability policy's coverage, the

> court must compare the policy language with the facts
> pled in the underlying suit to see if the claim falls
> within the express terms of the policy; the legal
> nomenclature the plaintiff uses to frame the suit is
> relatively unimportant.

Pennsylvania Millers Mut. Ins. Co. v. Doe, 882 F. Supp. 195, 198 (D.N.H. 1994) (quoting Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 271 (1st Cir. 1990)), aff'd sub nom. Pennsylvania Millers Mut. Ins. Co. v. Cheever, 47 F.3d 1156 (1st Cir. 1995); see also Winnacunnet Coop. Sch. Dist. v. National Union Fire Ins. Co., 84 F.3d 32, 36 (1st Cir. 1996) (court may inquire into underlying facts "'to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract'") (quoting M. Mooney Corp. v. United States Fidelity & Guar. Co., 136 N.H. 463, 469, 618 A.2d 793, 796-97 (1992)). At all times, the insurer bears the burden of showing that no coverage exists under the policy. See RSA § 491:22-a (1983).

6

The complaint in the underlying action, which alleges that Tousley negligently restrained Burke and that Tousley and Penuche's negligently maintained the premises, contains factual allegations from which it may be inferred that Burke suffered bodily injury caused by an "occurrence" that "ar[ose] out of the ownership, maintenance or use of the insured premises." Because these allegations are sufficient to bring Burke's claims within the general scope of coverage under the policy, United National will have a duty to defend and indemnify Tousley and Penuche's in the underlying action unless it demonstrates that coverage is barred by either of the exclusions that it claims are applicable.

The court first dispatches with United National's contention that the liquor liability exclusion in the policy precludes coverage. By its terms, this provision excludes only those claims "for which the insured or his indemnitee may be held liable <u>as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages</u>" (emphasis added). The clear import of this provision is that it excludes coverage in the event that the insured is found liable in his capacity as a manufacturer, distributor, seller, or server of alcohol. <u>See, e.g.</u>, <u>New Hampshire Ins. Co. v. Hillwinds Inn, Inc.</u>, 117 N.H. 350, 351, 373 A.2d 354, 355 (1977) (similar language excluded coverage for suit brought

7

against tavern for negligently serving alcohol to customer who, under influence of alcohol, injured plaintiff). Under the theory of liability in the underlying case, it is clear that Burke does not seek relief from Tousley and Penuche's in their capacities as sellers or servers of alcohol. Although Burke's complaint makes reference to the defendants' general duty to "[p]rovide that those persons exercising the role of 'bouncer' be absolutely sober," this allegation is unrelated to Burke's theories of recovery -- namely, that Tousley was negligent in restraining him, and that the defendants negligently maintained the facilities. Accordingly, the court finds the liquor liability exclusion inapplicable to Burke's state court action.

The court next addresses United National's reliance on the assault and battery exclusion. As noted above, the policy excludes

> coverage for claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the Insured, and/or his employees.

Construing any ambiguity created by the use of the term "whether" against the insurer, see, e.g., Trombly v. Blue Cross/Blue Shield, 120 N.H. 764, 772, 423 A.2d 980, 984-85 (1980), the court interprets the exclusion to apply only to claims arising out of assaults and batteries caused "by or at the instigation of, or at

8

the direction of, or omission by, the Insured, and/or his employees," and not to claims arising out of assaults and batteries that fall outside of this category.

This limitation undermines the plaintiff's contention that Burke's claim is excluded from coverage under the policy because of its relation to the original altercation that Burke attempted to break up and of which he ultimately became a victim. Neither Tousley's complaint nor the record before the court indicates that Burke, through either his acts or omissions, bears responsibility for any assault or battery committed during the course of the original altercation. Absent any such involvement on the part of Burke, the altercation cannot not trigger the assault and battery exclusion.

The court next turns to the plaintiff's second justification for invoking the assault and battery exclusion, i.e., its claim that the underlying lawsuit arises out of the bearhug in which Tousley placed Burke, and inquires whether the bearhug can constitute a battery sufficient to trigger the assault and battery exclusion. It is well settled that "[a]n actor is subject to liability to another for battery if . . . he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and . . . a harmful contact with the person of the

9

other directly or indirectly results." Restatement (Second) of Torts § 13 (1965); accord 6 Am. Jur. 2d Assault and Battery § 111 (1963), cited in Tupick v. Town of Gorham, No. 93-475-JD, slip op. at 14 (D.N.H. Oct. 13, 1994) (applying New Hampshire law). In order to be liable for battery, an actor must act "for the purpose of bringing about a harmful or offensive contact or an apprehension of such contact to another or to a third person or with knowledge that such a result will, to a substantial certainty, be produced by his act." Restatement (Second) of Torts § 18 cmt. e. A bodily contact is offensive only if it "offends a reasonable sense of personal dignity." Id. § 19.

In the instant case, it is undisputed that Tousley was merely acting as a peacemaker and did not intend to cause a harmful contact to Burke. Moreover, even taken in the light most favorable to United National, the record does not support an inference that Tousley intended to, or knew with substantial certainty that his acts were likely to, cause a contact with Burke that would offend a reasonable sense of personal dignity. Although the placement of a person in a bearhug might, in isolation, invade a reasonable person's sense of autonomy, such action, undertaken by an in innkeeper in a good-faith attempt to prevent the escalation of an altercation on the premises of his establishment, can only be viewed as a reasonable response to a

10

potentially dangerous situation.  Thus, it is beyond dispute that Burke's actions, although potentially performed negligently, lack the requisite intent to constitute a battery and thus to trigger the assault and battery exclusion.[2]

For the foregoing reasons, the court finds that Burke's claim against Tousley and Penuche's falls within the scope of the policy and is not barred by the liquor liability or assault and battery exclusion.  Accordingly, the court declares that United National has a duty to defend, and, if necessary, to indemnify Tousley and Penuche's in Burke's state court action against them.

---

The court pauses to note that while United National cites the district court's opinion in United Nat'l Ins. Co. v. The Tunnel, Inc., 1992 WL 245511, No. 90 CIV. 1070 (MJL) (S.D.N.Y. Sept. 14, 1992) for the proposition that the exclusion at issue would exclude coverage for a bouncer's actions in ejecting a patron, regardless of whether the bouncer acted intentionally or negligently, it has failed to point out that the case was heard on appeal and that the Second Circuit expressly overruled the district's court reasoning in affirming the case.  See United Nat'l Ins. Co. v. The Tunnel, Inc., 988 F.2d 351, 354 (2d Cir. 1993).  On appeal, the Second Circuit suggested that the exclusion would not preclude coverage for a bouncer who, in the course of performing his duties, negligently made contact with a patron but did not commit a battery.  See id.  The appellate court nonetheless affirmed the district court's grant of summary judgment because the claimant in the underlying tort suit, although proceeding under a negligence theory, had not advanced a colorable claim of negligence.  See id. at 354.  United National's failure to mention either the existence of an appeal in The Tunnel or the Second Circuit's analysis of the issues presented therein is particularly troubling given the centrality of the appellate opinion in The Tunnel to the issues presented in the instant case and the fact that United National was one of the litigants who argued The Tunnel before the Second Circuit.

<u>Conclusion</u>

United National's motion for summary judgment (document no. 13) is denied.  The motions for summary judgment of defendants Penuche's and Tousley (document no. 12) and defendant Burke (document no. 14) are granted.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 14, 1997

cc:   Vincent A. Wenners Jr., Esquire
      Rand S. Burnett, Esquire
      James B. Kazan, Esquire
      Jeffrey S. Cohen, Esquire