Metrop. Prop. & Cas. Ins. v. Daigle   CV-96-293-SD  05/14/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Metropolitan Property & Casualty
 Insurance Company;
Allstate Insurance Company


         v.                          Civil No. 96-293-SD


Richard Daigle;
Irene Palmer;
Donald Palmer
David Smith



                    **O R D E R**


     In its order of March 27, 1997, this court ruled that

Metropolitan Property & Casualty Insurance Company had no

contractual obligation to indemnify their insured, Richard

Daigle, for threatened legal liability arising from a civil

action brought against Daigle by Irene Palmer for the results of

a staged arrest.  Under the insurance policy, Metropolitan was

obligated to indemnify Daigle for legal liability arising from an

"occurrence" or an "accident."  Under caselaw construction of

similar policy language, liability-producing conduct is not

accidental if it is inherently injurious, which means that the

conduct is certain to result in some injury.  Vermont Mutual Ins.

Co. v. Malcolm, 128 N.H. 521, 523 (1986).  While courts had not

previously elaborated on the definition of "injury," this court drew from the distinction between "injury" and "harm" in the RESTATEMENT (SECOND) OF TORTS § 7 cmt. a (1965). Under the RESTATEMENT definition, "injury" denotes invasion of a legally protected interest, while "harm" denotes loss in fact, and the two concepts are not co-terminus. Relying on this definition of injury, the court held that the staged arrest perpetrated by Daigle was inherently injuries (and thus not a covered "accident") because it was certain to result in invasion of Palmer's legally protected interest in freedom from restraint, even though no harm or loss in fact was certain to attend that challenged conduct.

Daigle urges reconsideration on grounds that this court misinterpreted the term "injury" for purposes of determining whether conduct is inherently injurious.[1] According to Daigle, "injury" should be construed to mean loss in fact, and not invasion of legally protected interests. Since the staged arrest was not certain to result in loss to Palmer, Daigle's conduct was not inherently injurious.

The court finds unpersuasive Daigle's argument that "injury" should be construed as loss in fact rather than invasion of

_____

[1]Both plaintiffs have filed assented-to motions to allow late filing of objections to the motion for reconsideration. The motions for late filing are herewith granted, and such objections were considered by the court in its ruling on the instant motion.

legally protected interests.  First, this court rejects as inaccurate Daigle's claim that the New Hampshire Supreme Court used the term "injury" in the context of defining the scope of insurance coverage in a manner inconsistent with an interpretation of "injury" as invasion of legally protected interests.  In Fisher v. Fitchburg Mutual Ins. Co., 131 N.H. 769, 773 (1989), the New Hampshire Supreme Court held that the insured's conduct was certain to result in injury, and thus was inherently injurious.  The insured had signed two purchase and sale agreements for the  same residential property and thereafter refused to perform one of the two agreements.  The court found such conduct "inherently injurious" because "a reasonable person would foresee that entering into two contracts to sell the same property would inevitably lead to the breach of at least one of the two contracts."  Id. at 773.  According to the court, the "injury" that was certain to follow from the insured's conduct was breach of contract, which can be characterized as an invasion of another's legally protected interests, but cannot necessarily be characterized as harm or loss in fact.  It is not uncommon for contract breach to produce efficient win-win results for both parties to the contract.  Thus, entering two contracts for the sale of the same property would not inevitably result in loss in fact, but it would inevitably result in invasion of another's

3

legally protected interests.  The court's finding that the insured's conduct was "inherently injurious" because it was certain to result in breach of contract implies that the court defined the term "injury" as invasion of another's legally protected interests.

Daigle points to language in Provident Met. Fire Ins. Co. v. Scanlon, 138 N.H. 301, 306 (1994), which he claims supports his interpretation of "injury."  In Scanlon, several boys were playing a game of "daredevil," shooting BB guns at each other. One of the boys was hit in the eye, and sued the trigger man under a theory of negligence.  The court held that the insured's conduct of shooting the gun was not inherently injurious, reasoning that "[c]onsidering that until the final shot, numerous shots had been fired and three participants hit without injury, we have little difficulty concluding that it was not certain that the final shot would result in injury."  Daigle claims that this passage indicates that the court was equating "injury" with harm or loss in fact.  However, the quoted passage is at best ambiguous.  The three participants who were previously hit with BB shots suffered neither loss in fact nor invasion of their legally protected interests.  As the court recounted, the previous hits had evoked only laughter, and the boys were so far apart that the impact was light.  The previous hits therefore

4

resulted in no loss in fact.  Likewise, the three participants suffered no invasion of their legally protected interests as a result of the BB gun shots that hit them.  A claim for battery would fail because the participants consented to the contact.  A negligence claim was untenable because one of the elements of negligence is harm, and the boys were not harmed by the BB shots.  Since the boys suffered neither loss in fact nor invasion of their legally protected interests, no interpretive conclusions may be drawn from the observation that "numerous shots had been fired and three participants hit without injury."

Daigle next claims that the term "injury" should be given the meaning that a reasonable person reading Metropolitan's policy language would attach to it, because the preferred interpretation of the term "injury" will have the effect of setting the scope of the parties' contract rights.  According to Daigle, a reasonable reader would not attach the technical definition, "invasion of legally protected interests," to the term "injury."  Rather, in common parlance, the term "injury" is used to refer to loss in fact; i.e., "he entered the hospital with head injuries."  According to Daigle, this common usage of the term "injury" should inform the determination of whether conduct is "inherently injurious."

Granted, in many contexts, the term "injury" is often used

5

to denote loss in fact, the meaning that Daigle urges this court to adopt. However, it is axiomatic that meaning varies with context, and interpretive fallacy often results from fixing the meaning of language in one context by reference to an entirely different context. In this context, the term "injury" is used as part of a general scheme of risk allocation between an insurance company and its insured. The term should be understood to contribute as much as possible to the sensibility of the overall scheme of risk allocation between the parties. Interpreting "injury" as invasion of legally protected interests creates a sensible distribution of risk of legal liability between insured and insurer, and is the more appropriate interpretation.

The following commercial realities of insurance bargaining support this conclusion. Insurance contracts are aimed at allocating the risk of undesirable consequences, and, for a premium, insurance companies assume certain types and degrees of risk. If the insured exercises a greater degree of control over materialization of the undesirable consequences, the insurance company is put at an informational competitive disadvantage and could offer insurance against such consequences only at a high premium, if at all. For instance, insurance companies will insure against death, but not suicide, because the insured fully controls the occurrence or nonoccurrence of the latter. Here,

6

Metropolitan has not insured Daigle against legal liability arising from "inherently injurious" or intentional conduct, presumably because of the element of control exercised by Daigle. When "inherently injurious" conduct is understood as that which is certain to result in invasion of legally protected interests, then "inherently injurious" conduct is animated by a great measure of control over the occurrence or nonoccurrence of legal liability. When an insured engages in such conduct, they can be presumed to have willed the almost certain consequence of adverse legal liability. Understanding "injury" as invasion of legally protected interests would produce a sensible scheme of risk distribution between the parties, because allocation of risk depends on the degree of control over the undesirable consequences, legal liability, exercised by the insured. However, if "injury" is interpreted as loss in fact, then whether or not conduct is "inherently injurious" has only an indirect bearing on how great a risk of legal liability is posed by that conduct. Loss in fact does not necessarily result in legal liability, as the law permits all differing degrees and types of harm without imposing sanctions. Thus, inherently injurious conduct (or that which is certain to result in loss in fact) would not exhibit the insured's heightened degree of control over the occurrence or nonoccurrence of legal liability. If "injury"

7

is understood as loss in fact, allocation of risk turns on factors irrelevant to the degree of control over the occurrence or nonoccurrence of legal liability exercised by the insured. Understanding "injury" as "invasion of legally protected interests" rather than loss in fact produces the more sensible scheme of risk distribution between the parties, and should therefore be the preferred interpretation.

Daigle has presented no reason for this court to reconsider the interpretation of "injury" that informed its previous order. The caselaw cited by Daigle does not support his claim that this court misinterpreted the term "injury." Application of regularly relied-upon interpretive principles actually undermines Daigle's claim that this court proceeded under an erroneous interpretation of "injury." Daigle's motion to reconsider must be and herewith is denied.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

May 14, 1997

cc:  Gary M. Burt, Esq.
     Doreen F. Connor, Esq.
     Brackett L. Scheffy, Esq.
     Kevin E. Buchholz, Esq.
     Roy A. Duddy, Esq.

8